UNION OF ORTHODOX JEWISH
CONGREGATIONS OF
AMERICA, Plaintiff,

v.

AMERICAN FOOD & BEVERAGE
INC., Defendant.

No. 09 Civ. 8800(VM).

United States District Court,
S.D. New York.

Jan. 12, 2010.

David J. Butler, Bingham McCutchen,
LLP, Washington, DC, for Plaintiff.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Union of Orthodox Jewish Congregations of America ("Orthodox Union") moves for a default judgment against defendant American Food & Beverage, Inc., ("American Food") pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b). Orthodox Union also

makes an application to the Court for damages and attorneys fees against American Food pursuant to 15 U.S.C. § 1117(a).

Orthodox Union filed its Complaint for Damages and Injunctive Relief in this matter (the "Complaint") on October 16, 2009. Despite proper service of process, American Food never answered the Complaint (*see* Declaration of David J. Butler in Support of Motion for Default Judgment, dated December 11, 2009, ¶¶ 6–13; Clerk's Certificate of Default, dated December 11, 2009.) Accordingly, the Court now authorizes entry of a default judgment in favor of Orthodox Union against American Food for its unauthorized use of Orthodox Union's kosher certification mark (the "OU Mark") in violation of the Lanham Act, 15 U.S.C. § 1114(1). Further, as discussed below, upon consideration of Orthodox Union's written and oral evidence as to damages, attorneys' fees, and costs, the Court awards Orthodox Union a judgment in the amount of $266,149.12.

## I. *BACKGROUND*

According to the Complaint, Orthodox Union is the sole and exclusive owner of the OU Mark, which has been used on hundreds of thousands of food products to indicate that such products have been certified kosher. Consumers rely upon certification because of the complexity of kosher laws and the difficulty in determining whether a food product is kosher.

In Orthodox Union's separate action against Royal Food Distributors Limited Liability Company ("Royal Food"), captioned *Union of Orthodox Jewish Congregations of America v. Royal Food Distributors Limited Liability Company,* No. 09 CV 6418, (the "Royal Food case") Orthodox Union filed a Complaint and Motion for Preliminary Injunction with Temporary Restraining Order, dated July 20, 2009, in this Court for acts of trademark infringement, false designation of origin, dilution, unfair competition, and deceptive trade practices arising out of Royal Food's unauthorized use of the OU mark on several of Royal Food's products. During the pendency of the Royal Food case, Orthodox Union learned that Royal Food had an association with American Food. According to Orthodox Union, American Food is associated with, operates in conjunction with, or is the entity formerly known as Royal Food.

Orthodox Union attempted to stop American Food's unauthorized use of the OU mark by including American Food in its proposed preliminary injunction order in the Royal Food case. On July 28, 2009, the Court entered a preliminary injunction order enjoining American Food from any further unauthorized use of the OU mark on any food products they manufacture, sell, or distribute. Despite the injunction, American Food continued to distribute Veronica Bianca brand food products that prominently displayed the OU mark. The Orthodox Union never authorized American Food or Veronica Bianca to use the OU mark. On October 16, 2009, Orthodox Union filed the present action, which has now resulted in the Court authorizing the entry of a default judgment against American Food.

Orthodox Union makes an application to the Court for damages and attorneys' fees. In a distinct approach from that it took in the Royal Food case, Orthodox Union now argues that it is entitled to statutory damages for not only general types of goods, but for a more atomized list of goods. As discussed below, the Court is not persuaded that Orthodox Union should recover damages for sub-types of goods such as different flavors of the same brand of cookies, crackers, or wafers.

After entering a default judgment against Royal Food on September 10,

2009, the Court in its October 19, 2009 Decision and Order directed Royal Food to pay Orthodox Union, $356,189.02, comprised of $300,000 of statutory damages and $56,189.02 for attorneys' fees and costs. The $300,000 amount of statutory damages was comprised of $75,000 of statutory damages for each of four type of goods that Orthodox Union described in the Royal Food Complaint: (1) Veronica Bianca Danish Style Butter Cookies, (2) Veronica Bianca Crackers, (3) Veronica Bianca Wafers, and (4) Choice Lemon Juice. Orthodox Union requested statutory damages for only each of these four general type of goods. Orthodox Union included multiple sub-types of some of these four types of goods in its description of the general type of goods for which it sought statutory damages.[1] Orthodox Union did not claim that these different sub-types of goods constituted distinct types of goods for which it was entitled additional statutory damages.

In the present action against American Food, Orthodox Union now requests statutory damages for ten "infringing products," (*see* Declaration of David J. Butler in Support of Application for Damages and Attorneys Fees, December 11, 2009, ¶¶ 4–5). The ten types of goods for which Orthodox Union now seeks damages and asserts non-double-recovery fall into three more general categories or types of goods: (1) Veronica Bianca Tea Time Cookies; (2) Veronica Bianca Mini Crackers; and (3) Veronica Bianca Wafers. Specifically, Orthodox Union seeks damages for (1) five sub-types of Veronica Bianca Tea Time Cookies (ginger, vanilla, coconut, almond, and apple cinnamon); (2) three sub-types of Veronica Bianca Mini Crackers (original, cheese, and vegetable); and (3) two sub-types of Veronica Bianca Wafers (classic-style strawberry and classic-style vanilla).

## II. DISCUSSION

### A. STATUTORY DAMAGES

When the Court enters a default judgment, as regards liability it must "accept[ ] as true all of the factual allegations of the complaint," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981), but "the amount of damages are not deemed true." *Credit Lyonnais Sec. (USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir.1999); *see also Atias v. Sedrish*, 133 Fed.Appx. 759, 760 (2d Cir.2005) ("As this proceeding follows a default judgment, we take liability and all well-pleaded allegations of [the] complaint to be proven, and give [plaintiff] the benefit of all reasonable inferences therefrom, except where pertaining to damages."). The Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. This inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." *Id.*

Orthodox Union elected to recover statutory damages under 15 U.S.C. § 1117(c) (" § 1117(c)") instead of actual damages. Subsection 1117(c) provides trademark holders an alternative remedy to actual damages because "counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept[,] ... making proving actual damages in these cases extremely difficult if not impossible." S.Rep. No. 104–177, at 10 (1995). Plaintiffs may recover

---

1. Orthodox Union included two flavors of wafers (chocolate and strawberry) (and two different varieties of wafers, Classic and Belgian) in its generic description of Veronica Bianca Wafers as a "type of goods" and multiple flavors of crackers (original, butter, veggies, and cheese) in its generic description of Veronica Bianca Crackers.

between $1,000 and $200,000 in statutory damages "per counterfeit mark *per type of goods* or services sold, offered for sale, or distributed, as the court considers just," or if the violation was willful, up to "$2,000,000 per counterfeit mark *per type of goods* or services sold, offered for sale, or distributed, as the court considers just." *Id.* (emphases added).

The statute "does not provide guidelines for courts to use in determining an appropriate award," *Louis Vuitton Malletier v. Veit*, 211 F.Supp.2d 567, 583 (E.D.Pa. 2002), and is only limited by what "the court considers just." § 1117(c). However, courts have found some guidance in the case law of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement. *See, e.g., Louis Vuitton*, 211 F.Supp.2d at 583–84; *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp.2d 161, 166 (S.D.N.Y.1999). Under the Copyright Act, courts look to considerations such as: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the copyright"; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir.1986).

■ Considering American Food's default, its knowledge of the need for approval before using the OU Mark, and its continued unauthorized use of the mark after the Court ordered it to cease and desist from doing so, the Court finds American Food's infringement willful, and therefore has discretion to award any-

where between $1,000 and $2,000,000 per counterfeit mark per type of goods sold.

■ Despite Orthodox Union's assertions to the contrary, the Court finds that Orthodox Union identified only three types of goods sold by American Food for which it is entitled to statutory damages. These products, Veronica Bianca Tea Time Cookies, Veronica Bianca Crackers, and Veronica Bianca Wafers are manufactured, marketed, or distributed by American Food and display the OU Mark without authorization. Thus, the Court may award statutory damages of up to $2 million for each of these infringements.

As American Food never responded to Orthodox Union's Complaint, the Court must determine the statutory damages without the benefit of documentation relating to American Food's profits. However, given the strength of the OU Mark, the importance of the certification to consumers who rely upon its accuracy for religious and health reasons, American Food's willful infringement, and the need to deter any future infringement by American Food and others, the Court finds that an award of $75,000 per type of goods is appropriate and just. The $75,000–type–of–goods award is consistent with the Court's ruling in the Royal Food case. This award is also consistent with statutory damages awarded by other district courts for infringement of the OU Mark. *See Union of Orthodox Jewish Congregations of Am. v. The Wilder Spice*, Civil No. CCB–07–3122, 2008 WL 4372012, at *1 (D.Md. Sept. 10, 2008) (awarding Orthodox Union $300,000 for unauthorized use of the OU Mark on at least four types of spices); *Union of Orthodox Jewish Congregations of Am. v. Fleet Technologies, LLC*, Civ. A. No. 05–4605(WHW), 2008 WL 163583, at *1 (D.N.J. Jan. 16, 2008) (awarding $100,000 for unauthorized use of OU Mark).

As laid out above, Orthodox Union claims the right to damages for ten types of goods. However, the Court is not persuaded by Orthodox Union's contention that it identified ten distinct "types of goods" for the purposes of § 1117(c).

At the outset, in determining whether "type of goods" refers to more generic product brands or to each individual flavor or iteration of substantially-identical products, the Court notes the general absence of case law discussing this issue in the Second Circuit.

Common sense cuts in favor of defining the phrase "type of goods" to be the general product type as opposed to many sub-forms of that product. Defining "type of goods" to refer to the more generic product is appropriate because to accept a definition that considered sub-types to be distinct violations would mean that the copying of any generic product would lead to manifold awards of statutory damages of up to $2,000,000 for each different flavor, color, or even size of any given product. For example, if individual flavors of one brand of one food type constituted several types of goods, then an ice cream store that infringed Baskin Robbins's trademark on its advertised 31 flavors of ice cream would be liable for 31 awards of statutory damages of up to $2,000,000 each. Accordingly, the Court interprets "type of goods" to refer to generic products and not granular sub-types of that product.

In its letter dated January 4, 2010 (the "January 4, 2010 Letter"), Orthodox Union cites *Burberry, Ltd. v. Euro Moda, Inc.*, 2009 WL 4432678 (S.D.N.Y. Dec. 4, 2009) for the proposition that a court in this District ruled that scarves, hats, and polo shirts are distinct types of clothing goods under § 1117(c). The Court does not consider that decision as inconsistent with the Court's conclusion here in awarding dam-

ages only for Veronica Bianca Tea Time Cookies, Veronica Bianca Crackers, and Veronica Bianca Wafers. Awarding distinct damages for scarves, hats, and polo shirts is precisely analogous to what the Court holds here—and in the Royal Food case—in awarding damages for cookies, crackers and wafers.

Orthodox Union also cites to *Tiffany (NJ) Inc. v. Luban*, 282 F.Supp.2d 123 (S.D.N.Y.2003), as precedent for viewing "type of goods" to include substantially-similar forms of the same general type of goods. Orthodox Union has not pointed to anything in that case that suggests that the 28 types of jewelry for which this Court awarded damages were different forms of the same design, color, size, or even type of jewelry. Distinct jewelry designs are more analogous to distinct brands of food' products than they are to different flavors of the same brand of food product. Further, despite Orthodox Union's citation of *Chanel, Inc. v. Louis*, No. 06 CV 5924, 2009 WL 4639674 (E.D.N.Y. Dec. 7, 2009) to support the proposition that courts award damages for sub-types of more general products, that case (based on the information found in the published opinion) seems to involve different handbag lines and not simply different colors, sizes, shapes, or other smaller variations within those lines. The Court also notes that the district court in the *Chanel* case awarded only $3,000 of statutory damages per infringing type of goods for each of the almost two dozen styles of bags infringed, and not $75,000 of statutory damages per product as the Court does in the instant case.

As the January 4, 2010 Letter recognizes, other courts in this district have expressed a reluctance to allow the number of types of goods to multiply because of the existence of sub-types. *See Gucci America, Inc. v. MyReplicaHandbag.com,*

2008 WL 512789 (S.D.N.Y. Feb. 26, 2008) ("For the purpose of awarding damages [under § 1117(c) ], it seems unduly artificial to categorize the merchandise into separate 'types' for each subtle difference in a particular product's size, shape, color, pattern or fabric."); *id.* (finding that the defendants infringed on six types of goods (handbags, wallets, handbag and wallet sets, eyeglasses, belts, and watches), as opposed to 424 types for which plaintiff had argued and sought a damage award in an amount of $424 million).

In the January 4, 2010 Letter, Orthodox Union also argues that individual forms (for example, different flavors) of the same food-product line are distinct types of goods because of the character of the process involved in determining kosher certification (i.e., that the certification process is distinct for each iteration of a given product). The Court is not persuaded that the process by which a product is produced can solely determine whether it constitutes a distinct type of goods for the purposes of § 1117(c). If the process alone were determinative, then every ingredient variation in different food products' flavors, every dye variation in different garments' colors, and every cutting variation in dry goods' sizes and shapes could lead to discrete, multiplicitous statutory damages in staggering numbers, as was requested in the MyReplicaHandbag.com case.

Lastly, in addition to promoting a more equitable, common sense approach to analyzing § 1117(c)'s terms "type of goods," the Court notes that its course here is consistent with both Orthodox Union's request and the Court's analysis in the Royal Food case. The Court awards Orthodox Union $225,000 of statutory damages, comprised of three awards of $75,000, one for each type goods infringed by American Food.

## B. *ATTORNEYS' FEES AND COSTS*

■ Pursuant to the Lanham Act, the Court may award reasonable attorneys' fees and costs to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "In the Second Circuit, exceptional cases warranting the award of reasonable attorney's fees are limited to those evidencing fraud, bad faith, or willful infringement." *See Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Serv., LLC*, 553 F.Supp.2d 201, 207 (E.D.N.Y.2008) (citing *Gordon & Breach Sci. Publishers S.A. v. American Inst. of Physics*, 166 F.3d 438, 439 (2d Cir.1999)). As discussed above, the Court accepts Orthodox Union's allegations of willful infringement against American Food, and finds that an award of attorneys' fees and costs is appropriate. Orthodox Union provided the Court with a total figure of $41,149.12, which includes 38 hours of work performed by David J. Butler, a partner, at a rate of $735 per hour; 27.5 hours of work performed by Randall M. Levine, an associate, at a rate of $400 an hour; 4.4 hours of work by David Marcus, another associate, at a rate of $275 an hour; and additional costs of $1,009.12, which includes filing fees, process server fees, travel expenses, and expense reimbursements. The Court finds these fees and costs reasonable, and therefore awards Orthodox Union an additional $41,149.12 in attorneys' fees and costs.

## III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 10) of plaintiff Union of Orthodox Jewish Congregations of America for default judgment is GRANTED, and it is further

**ORDERED** that defendant American Food is liable to plaintiff Union of Orthodox Jewish Congregations of America, and

the Clerk of Court is directed to enter judgment, in the total amount of $266,149.12, representing statutory damages of $225,000 and attorneys' fees and costs of $41,149.12.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**