**CHANEL, INC., Plaintiff,**

v.

**VERONIQUE IDEA CORP., et al., Defendants.**

**No. 10 Civ. 2587(VM).**

United States District Court, S.D. New York.

June 28, 2011.

John MacAluso, Gibney, Anthony & Flaherty, LLP, New York, NY, Stephen M. Gaffigan, Stephen M. Gaffigan, P.A., Ft. Lauderdale, FL, for Plaintiff.

Jonathan Yoon Sue, Jonathan Y. Sue, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Chanel, Inc. ("Chanel") brought this action alleging, among other things, trademark infringement and false designation of origin under the Lanham Act (the "Act"), 15 U.S.C. §§ 1114(1) and 1125(a) ("§§ 1114(1) and 1125(a)") against defendant Veronique Idea Corp. and individual defendant Jong Eun Park ("Park") (together, "Defendants"). On September 13, 2010, the Court entered a Stipulated Consent Permanent Injunction. Chanel now moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") on liability and damages under the Act. For the reasons discussed below, Chanel's motion is GRANTED.[1]

---

1. Chanel's Complaint identified four registered trademarks. However, Chanel has indicated that, because Defendants have failed to respond to certain discovery requests in this matter, they have not obtained evidence sufficient to move for summary judgment with respect to Reg. Nos. 0,612,169, 0,902,190, and 3,133,139. As described below, this De-

## I. BACKGROUND [2]

Chanel is engaged in the business of manufacturing and distributing high-end costume jewelry under the federal registered trademark "CC", U.S. Trademark Registration Number 1,501,898 (the "Chanel Mark"). Chanel's genuine products are among the best-selling costume jewelry in the world and the Chanel Mark is a symbol of Chanel's quality, reputation, and goodwill, which has never been abandoned. The Chanel Mark has never been assigned or licensed to the Defendants nor do they have the right or authority to use the Chanel Mark for any purpose.

Despite Defendants' knowledge of Chanel's ownership of the Chanel Mark, Defendants promoted, displayed, offered for sale, and sold costume jewelry, including pendants, earrings and necklaces bearing the Chanel Mark at issue. On or about March 15, 2010, Adrienne Hahn Sisbarro ("Hahn"), Chanel's Director of Legal Administration, engaged Investigator Elizabeth Elfeld ("Elfeld") and American Trademark Investigations, Inc. to conduct an investigation of Defendants' business operations. On March 16, 2010, while visiting Defendants' business location, Elfeld observed on display a necklace identified as No. N50209, and a pendant identified as No. P20627 (the "Pendant"), each bearing the Chanel Mark at issue. The following day Elfeld sent an e-mail message to Defendants requesting pricing and pictures of several of the items she saw on display including the Pendant. On March 18, 2010, Elfeld received an email from Defendants, which attached pictures and prices for the items she inquired about in her March 16 email (the "Photo Price List").

By e-mail dated March 19, 2010, Elfeld placed an order for one dozen of each of the jewelry items identified in the Photo Price List. A few days later, on March 24, 2010, Elfeld received an e-mail confirmation from Defendants attaching Invoice # 114377, dated March 23, 2010, in the amount of $837.00, which listed, among other things, twelve of the Chanel branded Pendants she had ordered. That same day, Chanel served Defendants with a copy of the Summons and Complaint in this case describing Defendants' infringement and counterfeit activities.

On March 26, 2010, Elfeld traveled to Defendants' retail storefront to finalize her purchase. She was "provided with a paper bag, and she compared the contents of the bag with Invoice # 114377 and confirmed that the order was complete, including the counterfeit Chanel branded pendants, with chains." (Pl. 56.1 Statement ¶ 31.) Elfeld then paid for the products with a cashier's check made payable to Veronique Idea Corp. in the amount of $837.00. The Pendants purchased from Defendants were then delivered to Chanel, together with a chain of custody, for analysis. The Pendants were determined to be "non-genuine counterfeit products" that were "of a different quality than genuine Chanel jewelry products." (Hahn Decl. ¶ 17; *see also* Pl. 56.1 Statement ¶ 32.)

## II. DISCUSSION

### A. STANDARD OF REVIEW

In connection with a Rule 56 motion, summary judgment is appropriate when the evidence "show[s] that there is no gen-

---

cision and Order is limited to trademark Reg. No. 1,501,898.

**2.** The Court derives the factual summary from (1) Plaintiff's Statement of Material Facts Not in Dispute Pursuant to Local Civil Rule 56.1 ("Pl. 56.1 Statement"), dated January 5,

2011; and (2) Defendants' Rule 56.1 Counter–Statement ("Defs. 56.1 Statement"), dated January 25, 2011, as well as the declarations and exhibits attached to those documents. Except where specifically referenced, no further citation to these sources will be made.

uine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

In a case such as this one where the plaintiff would ultimately bear the burden of persuasion at trial and is the movant for summary judgment, the plaintiff must make a *prima facie* showing, with sufficient admissible evidence, that there are no genuine issues of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading"; the non-moving party must respond with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "To this end, '[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Golden Pac. Bancorp v. FDIC,* 375 F.3d 196, 200 (2d Cir.2004) (*quoting D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998)). In other words, the non-movant "cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR–TV, Inc.,* 411 F.3d 69, 75 (2d Cir. 2005) (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## B. *LANHAM ACT CLAIMS*

 Chanel claims that Defendants have violated both §§ 1114(1) and 1125(a).

"Under § 1114 of the Lanham Act, plaintiff in a trademark infringement action must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion." *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993); *see also* 15 U.S.C. § 1114(1)(a). Section 1125(a) extends similar protections to unregistered trademarks. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 155 (2d Cir.2002) (observing that § 1125(a) "is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that [§ 1114(1)] protects registered marks."). The difference between §§ 1114(1) and 1125(a) is not significant for the purposes of the instant motion.

 For both Lanham Act claims, Chanel must demonstrate "(1) that it has a valid mark that is entitled to protection under the Act and (2) that [defendants'] actions are likely to cause confusion as to the origin of the mark." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 286 F.Supp.2d 284, 287 (S.D.N.Y.2003); *see also Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996). The parties do not dispute the validity of the Chanel Mark and thus the Court's resolution of this motion will turn on the second prong, likelihood of confusion.

 As a general matter, likelihood of confusion is determined in the Second Circuit by the multi-step test set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* which includes examination of:

the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in

adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

287 F.2d 492, 495 (2d Cir.1961). *See also Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 391 (2d Cir.1995).

■ In this case, however, the Court need not undertake a step-by-step analysis under *Polaroid* because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.,* 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the *Polaroid* factors."). Indeed, causing customer confusion is the entire purpose behind the manufacture of counterfeit goods. *See Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion."). Thus, the Court need only determine the more fundamental question of whether the items at issue here are, in fact, counterfeit and whether Defendants sold those items.

■ It is undisputed that Defendants engaged in the purchase and sale of goods bearing the Chanel Mark at issue. Defendants do not contest that an investigator purchased twelve Pendants from Defendants containing the Chanel Mark which were later analyzed and determined to be "non-genuine copies of Chanel goods." (Pl. Rule 56.1 Statement ¶ 32; *see also* Hahn Decl. ¶ 17 ("I can confirm that the Chanel branded jewelry products being offered for sale by the [Defendants] are non-genuine counterfeit products and are of a different quality than genuine Chanel jewelry products.").) Furthermore, Defen-

dants admit that Park testified that the "suppliers of the *counterfeit* Chanel branded items at issue were two individuals ... named only 'Jack and Lee,'" (Pl. Rule 56.1 Statement ¶ 38) (emphasis added), and despite concerns he had about purchasing the items because they were not identical to the Chanel Mark, Park proceeded to engage in regular business with them. Specifically, Park testified:

Q: Okay. So even though it's not customarily the way you or Veronique Idea Corp. does business, you went ahead and did regular business in cash with Jack and Lee for Chanel-branded jewelry items, correct?

A: Yes, I did. I mean—I had to think about it. I mean, I—I had—yeah, a lot. I mean, I had concerns. I had—be-cause—because the—because it's not—it was not identical to the Chanel mark, trademark, but it was—it looked similar, they looked similar.

(Pl. Rule 56.1 Statement, Ex. C, 78:15–25 through 79:1–2.)

■■ Since Defendants do not contest that they bought and sold counterfeit items containing the Chanel Mark, they have necessarily admitted the likelihood of consumer confusion. *See Topps,* 41 U.S.P.Q.2d at 1417; *see also Polo Fashions,* 816 F.2d at 148. Additionally, Defendants have produced no evidence, or expert opinion, that sufficiently refutes Hahn's findings that the jewelry bought and sold by Defendants bearing the Chanel Mark at issue were not counterfeits. The Court concludes that, with this evidence alone, no reasonable juror would fail to hold Defendants liable under §§ 1114(1) and 1125(a). Because the Court finds that no genuine issue of material fact remains with respect to Defendants' liability under the Act, Chanel is entitled to summary judgment on this issue.[3]

---

**3.** Although the parties have not raised the issue, the Court is mindful that to hold a

corporate officer, such as Park, personally

## C. DAMAGES CLAIM

### 1. Damages under the Lanham Act

When the Lanham Act has been violated, the Act provides for actual damages, consisting of the sum of (1) defendant's profits, (2) "any damages sustained by the plaintiff," and (3) court costs. *See* 15 U.S.C. § 1117(a) ("§ 1117(a)"). Section 1117(a) provides in pertinent part:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a *violation* under section 1125(a) or (d) of this title, or a *willful violation* under section 1125(c) of this title, shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. § 1117(a) (emphasis added).

Courts in this District are split over the issue of whether an award of damages under § 1117(a) requires a showing of either (1) actual confusion; or (2) bad faith, meaning intentional deception or willfulness. *See GMA Accessories, Inc. v. BOP, LLC,* 765 F.Supp.2d 457, 468–70 (S.D.N.Y. 2011) (collecting and comparing cases). Prior to the Trademark Amendment of 1999 (the "1999 Amendment"), the law of this Circuit required a plaintiff to prove that an infringer acted in bad faith to recover an accounting of an infringer's profits. *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.,* 80 F.3d 749, 753 (2d Cir.1996). The plaintiff was also required to "prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.,* 145 F.3d 481, 493 (2d Cir.1998); *see also George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532 (2d Cir. 1992).

In *Cartier v. Aaron Faber, Inc.,* this Court held that, under a plain reading of the statute, the willfulness requirement did not survive the 1999 Amendment. 512 F.Supp.2d 165, 172–73 (S.D.N.Y.2007); *see also Nike, Inc. v. Top Brand Co.,* No. 00 Civ. 8179, 2005 WL 1654859, at *9–10 (S.D.N.Y. July 13, 2005) (holding that willfulness is not a prerequisite for an award of damages under § 1125(a)). However, other courts in this District have found that willful deception or bad faith continues to be a requirement to an award of profits or damages even after the 1999 Amendment. *See, e.g., GMA Accessories,* 765 F.Supp.2d at 470–71; *Mr. Water Heater Enter., Inc. v. 1–800–Hot Water Heater, LLC,* 648 F.Supp.2d 576 (S.D.N.Y.2009); *Life Servs. Supplements, Inc. v. Natural Organics, Inc.,* No. 03 Civ. 6030, 2007 WL 4437168 (S.D.N.Y. Dec. 17, 2007). The

liable under the Act, Chanel must demonstrate that Park is a "moving, active conscious force behind [the defendant corporation's] infringement." *Lee Myles Auto Grp., LLC v. Fiorillo,* NO. 10 Civ. 6267, 2010 WL 3466687, at *7 (S.D.N.Y. Aug. 25, 2010) (internal citations and quotation marks omitted); *see also Gucci Am. Inc. v. Duty Free Apparel,* 315 F.Supp.2d 511, 520 n. 7 (S.D.N.Y.2004); *West Indian Sea Island Cotton Ass'n Inc. v. Threadtex, Inc.,* 761 F.Supp. 1041, 1054 (S.D.N.Y.1991). A showing that the officer " 'authorized and approved the acts of unfair competition which are the basis of [the] ... corporation's liability' is sufficient to subject the officer to personal liability." *GAKM Res. LLC v. Jaylyn Sales Inc.,* No. 08 Civ. 6030, 2009 WL 2150891, at *4 n. 3 (S.D.N.Y. July 20, 2009) (*quoting Bambu Sales, Inc. v. Sultana Crackers,* 683 F.Supp. 899, 913 (E.D.N.Y. 1988)). Upon review of the record, the Court finds that no genuine issue of material fact exists regarding the liability of Park under the Act. Accordingly, the Court grants Chanel's summary judgment motion for individual liability under the Act as to Park.

United States Court of Appeals for the Second Circuit has not directly addressed this issue. The Court remains persuaded that a showing of willfulness is no longer a prerequisite for an award of damages under § 1125(a).

■ In any event, based upon a review of the record, the Court finds that no reasonable trier of fact would fail to find that Defendants acted in bad faith. There is undisputed evidence that Defendants continued to sell counterfeit merchandise even after they were served with the Complaint and thus had notice of their alleged infringing activities. *See, e.g., Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488, 496 (4th Cir.1996) (holding that trial court did not err when instructing jury that "[i]n general, evidence that notice has been accorded to the defendants before the specific facts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness"); *Video Views, Inc. v. Studio 21 Ltd.,* 925 F.2d 1010, 1021 (7th Cir.1991).

In an effort to minimize the consequences of a post-service transaction, Defendants contend that the sale was simply a consummation of a prior sale. (*See* Defs. Rule 56.1 Statement ¶ 31 ("[T]he Veronique representative helping Elfeld was not putting in a new order but closing an existing transaction where Elfeld had placed the order and received the invoice prior to service of Summons and Complaint.").) In addition, Defendants assert that Park was never personally served with the Complaint. Yet, contrary to the requirements of Local Rule 56.1, Defendants offer no evidence in support of that statement. Chanel, on the other hand, has filed a sworn Return of Service showing that the Summons and Complaint was served on Park on March 24, 2010. The Court further notes that in his Declaration, Park specifically states that "[w]e were served with a Summons and Complaint regarding this case on March 24, 2010." (Defs. Rule 56.1 Statement, Ex. A., Park Decl. ¶ 8.) Accordingly, the Court concludes that no genuine issue of material fact exists regarding Defendants' sales activities after being served with a copy of the Summons and Complaint.

To persuade the Court that there is a triable issue of fact as to willfulness. Defendants rely on *American Int'l Group, Inc. v. London Am. Int'l Corp.* for the proposition that "subjective issues such as good faith are singularly inappropriate for determination on summary judgment." 664 F.2d 348, 353 (2d Cir.1981). In a later case, however, the Second Circuit stated:

> While we are well aware that caution must be exercised in granting summary judgment when state of mind is in issue, [t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.

*Res. Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 141 (2d Cir.1991).

Here, Chanel has submitted undisputed evidence demonstrating that Defendants bought and sold counterfeit goods bearing the Chanel Mark with full knowledge that they did not have the authority to use the mark for any purpose. (*See* Pl. Rule 56.1 Statement ¶ 47.) In his deposition, Park admitted that he had concerns about purchasing inauthentic Chanel-branded merchandise from Jack and Lee and "whether it was going to become a big problem or not." (Pl. Rule 56.1 Statement, Ex. C, 79:12–13.). Nonetheless he continued to purchase and sell the products bearing the Chanel Mark. *See Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995) (holding that a defendant's infringement "will be found willful ... where the defendant had knowl-

edge that its conduct constituted infringement or showed reckless disregard for the copyright holder's rights"). In response, Defendants claim that because they saw other companies in New York selling the same Chanel-branded jewelry products they believed they were acting in good faith. Defendants, however, have not provided, and the Court is unaware of, any legal authority supporting such a defense to trademark infringement and counterfeiting claims.

Specifically, Defendants state that "as a precautionary measure [Park] had the employees search online, which revealed that a large and reputable fine jewelry store on 47th Street was selling the exact same items openly on the internet." (Defs. Mem. at 6.) The Court notes that Defendants have neither produced admissible evidence in support of this statement nor have they identified specifics regarding the circumstances surrounding the online searches (*i.e.*, the names of the employees conducting the search, the date of the searches, and the results of those searches). To defeat a motion for summary judgment, Defendants must submit "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and that there is "some hard evidence showing that [their] version of the events is not wholly fanciful.'" *Golden Pac. Bancorp*, 375 F.3d at 200. Because the Court finds that Defendants have not produced any admissible evidence from which a reasonable jury could conclude that Defendants did not act in bad faith, Chanel is entitled to summary judgment on this issue.

### 2. *Damages Calculation*

#### a. *Sales/Profits*

Because Chanel has demonstrated that it is entitled to profits, it is required only to prove Defendants' sales. *See* § 1117(a). Chanel seeks a base profit award pursuant to § 1117(a) in the amount of $71,400.51

based on Defendants' admitted gross revenues. (See Pl. Rule 56.1 Statement, Ex. C, Park Dep. (Ex. 13), May 18, 2010 correspondence from Defendants to Chanel's counsel regarding sales of products bearing Chanel Mark at issue.)

#### b. *Deductions for Costs and Expenses*

Pursuant to § 1117(a), Defendants have the burden to prove any costs or deductions from their gross revenues. *See* § 1117(a). Chanel requests that the Court deny Defendants the opportunity to submit evidence regarding their purported costs of goods and expenses as a sanction for their failure to participate in discovery and their litigation misconduct. The Court agrees.

▮ Rule 37(b) of the Federal Rules of Civil Procedure states that:

> If a party or a party's officer . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.

Fed.R.Civ.P. 37(b)(2)(A)(ii). By Order dated June 22, 2010 (the "June 22 Order"), the Court directed Defendants to produce within fourteen days all purchase and sale records related to the alleged counterfeit goods bearing the Chanel Mark at issue. Further, the Court ordered that, in the event Defendants failed to comply with the June 22 Order, the Court may enter appropriate sanctions against Defendants including certain negative inferences regarding issues relating to both liability and damages in this action. Almost six months later, at the November 19, 2010 conference held with the parties. Defendants still had not produced the documents. At the con-

ference, Defendants again requested additional time to produce the documents, but the Court denied such request. The Court notes that this matter is far simpler than many of the cases on its docket in which parties are able to comply with the Court's discovery orders. Defendants' failure to produce the requested documents within the specified time frame is inexcusable. The Court thus finds that sanctions are warranted. Accordingly, Chanel's request to preclude Defendants from introducing any evidence, whether documents or testimony, in support of their claimed deductions from gross revenue is granted. Since no costs or expenses will be deducted from Defendants' gross profits, Chanel is entitled to an amount of $71,400.51 in actual profits.

c. *Treble Damages*

 Chanel seeks to treble Defendants' profits pursuant to 15 U.S.C § 1117(b) ("§ 1117(b)"). Section 1117(b) provides, in pertinent part, that:

> In assessing damages under subsection (a) for any violation of section 1114(1)(a) of this title . . . in a case involving use of a counterfeit mark or designation (as defined in section 1116(d) of this title), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of
>
> (1) intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C § 1117(b)(1). As discussed above, no rational jury could fail to find that Defendants intentionally purchased and sold jewelry products bearing the Chanel Mark at issue with full knowledge that they were without the right or authority to do so. Accordingly, Chanel is enti-

tled to treble damages to reflect a total profit of $214,201.53 (3 × $71,400.51).

d. *Statutory Damages*

 In the alternative, Chanel requests an award of statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of $300,000. A plaintiff may elect to collect statutory damages in lieu of actual damages when actual damages are difficult to calculate. *See* 15 U.S.C. § 1117(c). The Court denies Chanel's request for statutory damages because actual profits can be determined to a reasonable certainty in the case at hand. *See Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1127 (2d Cir.1989) ("Statutory damages are awarded when no actual damages are proven or they are difficult to calculate."); *see also Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage Inc.*, 704 F.Supp.2d 288, 290 (S.D.N.Y.2010).

## D. ATTORNEYS' FEES AND COSTS

 Pursuant to the Act, the Court may award reasonable attorneys' fees and costs to the prevailing party in "exceptional cases." § 1117(a). In the Second Circuit, "attorney's fees should be awarded pursuant to § 1117 only on evidence of fraud or bad faith." *See Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*, 279 Fed. Appx. 42, 43 (2d Cir.2008) (internal citations and quotation marks omitted). As discussed above, the Court concludes that there is no material issue of fact that Defendants intentionally infringed and counterfeited the Chanel Mark, and thus finds that an award of attorneys' fees and costs is appropriate.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 24) of plaintiff Chanel, Inc. ("Chanel") for partial summary judgment is GRANTED; and it is further

**ORDERED** that defendant Veronique Idea Corp. and individual defendant Jong Eun Park (together, "Defendants") are jointly and severally liable to Chanel. The Clerk of Court is directed to enter judgment, in the total amount of $214,201.53 against Defendants; and it is further

**ORDERED** that Chanel's request for reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) ("§ 1117(a)") is GRANTED. Chanel is directed to submit a schedule detailing the reasonable attorneys' fees and costs allowable under § 1117(a) within fourteen (14) days of the date of this Decision and Order; and it is further

**ORDERED** that the parties appear before the Court for a conference on July 8, 2011 at 11:00 a.m. to set a trial date with respect to the remaining trademarks and discuss any outstanding pre-trial issues.

**SO ORDERED.**